|   |   |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | UNITED STATES DISTRICT COURT |
| 9 | SOUTHERN DISTRICT OF CALIFORNIA |
| 10 | |

```
QUALCOMM INCORPORATED,       )  Case No. 05CV1392-B (BLM)
                             )
            Plaintiff,       )  ORDER GRANTING IN PART AND
v.                           )  DENYING IN PART DEFENDANT'S
                             )  MOTION FOR SANCTIONS
BROADCOM CORPORATION,        )
                             )  [DOC. NO. 256]
            Defendant.       )
_____)
BROADCOM CORPORATION,        )
                             )
       Counterclaimant,      )
v.                           )
                             )
QUALCOMM INCORPORATED,       )
                             )
       Counterdefendant.     )
_____)
```

On September 6, 2006, the Court authorized expedited briefing on Defendant Broadcom Corporation's (Broadcom) motion for sanctions. Doc. No. 244. Broadcom timely filed the instant motion, [Doc. No. 256], through which it requests the imposition of preclusive sanctions, or in the alternative, Plaintiff Qualcomm Incorporated's (Qualcomm) immediate production of source code and source code analysis tools. Id. at 1-2. Moreover, Broadcom seeks leave to reschedule five (5) depositions related to source code, see id., and requests a one-sided extension of

the expert report deadline to incorporate the allegedly overdue discovery. Def's Reply at 1 n.1. Qualcomm opposed Broadcom's motion on September 15, 2006, and Broadcom filed a reply on September 20, 2006. The Court took the briefing under submission pursuant to Civil Local Rule 7.1(d)(1).

Having reviewed the briefing and all supporting documents submitted, and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Broadcom's motion for sanctions. Doc. No. 256.

## **LEGAL STANDARD**

Federal courts may impose sanctions on parties failing to comply with court orders under both the Federal and Local Rules. For example, Rule 37(b)(2) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failures as are just. Fed. R. Civ. P. 37(b)(2). Granting considerable but not unlimited discretion in federal courts to fashion appropriate penalties, Rule 37 permits orders "refusing to allow the disobedient party to support or oppose designated claims or defenses," and "prohibiting that party from introducing designated matters in evidence," among others. Fed. R. Civ. P. 37(b)(2)(B). Moreover, Civil Local Rule 83.1 provides that

> [f]ailure of counsel or of any party to comply with these rules . . . or with any order of the court may be ground for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions.

CivLR 83.1(a).

In addition to this rule based authority, all "federal courts are vested with inherent powers enabling them to manage their cases and

courtrooms effectively and to ensure obedience to their orders. . . . As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines." Aloe Vera of Am., Inc. v. United States, 376 F.3d 960, 964-65 (9th Cir. 2004) (citing F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1136 (9th Cir. 2001)). Severe sanctions are appropriate in response to "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). In addition to willfulness, when a court order is violated, a district court considering the imposition of sanctions must also examine the risk of prejudice to the complying party and the availability of less drastic sanctions. See Commodity Futures Trading Comm'n v. Noble Metals, 67 F.3d 766, 771 (9th Cir. 1995), cert. denied, 519 U.S. 815 (1996) (referencing Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990), cert. denied, 498 U.S. 1109 (1991)).

## DISCUSSION

Broadcom predicates its motion for sanctions on Qualcomm's alleged failure to produce relevant source code and source code analysis tools in violation of the Court's July 26, 2006 Order Setting Dates for the Exchange of Invalidity Contentions and Opinions of Counsel [Doc. No. 191], and its August 10, 2006 Order Regarding Document Production [Doc. No. 218]. Def's Mem. at 2-3; Def's Reply at 2. Broadcom claims that Qualcomm's practice of unilaterally determining which source code is relevant to the claims and defenses asserted in this case, its refusal to supplement its source code production absent identification by Broadcom of missing code, and its untimely, piecemeal, and as yet, incomplete production of responsive source code has caused Broadcom to

suffer prejudice.  Def's Mem. at 4; Def's Reply at 2-3.  For example, Broadcom contends that Qualcomm's conduct has crippled its experts' source code analysis and forestalled its attorneys' ability to prepare for source code-related depositions.  Def's Mem. at 4.  Broadcom also alleges that Qualcomm has failed to provide tools essential to Broadcom's source code analysis in direct violation of the applicable protective order [Doc. No. 125].[1]  Def's Mem. at 5-7; Def's Reply at 8-9. Broadcom takes particular issue with the lengthy delay in Qualcomm's identification and installation of the Debussy tool, and insists that Qualcomm's undue burden objection to the production of the ModelSim tool is without merit.  Def's Mem. at 6-7; Def's Reply at 8-9.

Broadcom argues that Qualcomm's alleged violation of the aforementioned orders justifies issue preclusion sanctions.  Def's Mem. at 7-9; Def's Reply at 9-11.  In particular, Broadcom seeks an order barring Qualcomm from arguing that "its accused products lack the recited functionality of the Broadcom patent claims to the extent that source code related to the subject functionality has been withheld." Def's Mem. at 8.  In the alternative, Broadcom asks that Qualcomm be ordered to produce (1) all responsive source code, accompanied by an identification of those files responsive to Broadcom's various Rule 30(b)(5) deposition notices, and (2) the ModelSim tool—or any other software analysis tool—in the same hardware or software environment in which such analysis tools are used by Qualcomm's engineers.  Id. at 8-9; Def's Reply at 10-11.  Finally, Broadcom seeks leave to reschedule five

---

[1] With regard to the inspection of source code, the protective order provides that the "Receiving Party may request that specific standard software analysis tools used by the Disclosing Party be available on the Disclosing Party's computer, which request shall not be unreasonably denied."  Doc. No. 125 at ¶ 8(d).

(5) source code-related depositions, and, to incorporate Qualcomm's supplemental source code production, requests an additional two (2) weeks to prepare and produce its expert reports. Def's Mem. at 9; Def's Reply at 1 n.1.

Qualcomm denies that its production of source code and source code analysis tools was in any way delinquent or in violation of any discovery order. First, Qualcomm represents that it produced all source code relevant to Broadcom's infringement contentions and discovery requests in full compliance with the Court's orders. Plf's Opp. at 2-3, 8-10; see also Riddle Decl. at ¶¶ 2-3; Amerga Decl. at ¶¶ 3-5, 8, 10; Kang Decl. at ¶¶ 3-4, 8; Konganda Decl. at ¶ 2 (describing Qualcomm's engineers' efforts to identify and produce source code over the course of discovery). Notwithstanding the alleged adequacy of its source code production, Qualcomm notes that it opted not to object to Broadcom's numerous demands for additional source code, and, regardless of relevance, simply agreed to produce supplemental code as identified by Broadcom. Plf's Opp. at 6, 10-11. Second, Qualcomm contends that it has made every reasonable effort to meet Broadcom's demands for source code analysis tools. Id. at 3-7, 11-13. In support, Qualcomm asserts that on August 4, 2006, it provided Broadcom with a source code computer configured with the standard software "image"[2] used by its engineers, and, at Broadcom's insistence, installed a Debussy tool some ten days

---

[2] Qualcomm represents that this standard software "image" is comprised of twenty-two (22) different analysis tools. Plf's Opp. at 4.

later.[3]  Id. at 3-5, 10.  However, Qualcomm objects[4] to Broadcom's requests for production of the ModelSim tool, distinguishing ModelSim as a tool used not to analyze software structure but to run hardware simulations, and emphasizing that its installation would be unduly burdensome.[5]  Id. at 11-12; see also Shippee Decl. ¶¶ 5, 8-10.  In light of these representations, Qualcomm characterizes the instant motion as a transparent attempt to manufacture a non-existent discovery violation, and as such, argues that Broadcom's motion should be denied in its entirety.  Plf's Mem. at 1, 13-17.

### A.  Preclusion Sanctions

As set forth in the Court's Order Setting Dates for the Exchange of Invalidity Contentions and Opinions of Counsel, [Doc. No. 191], the Court set an unambiguous deadline for the parties' production of source code related to invalidity contentions: July 21, 2006.  Id. at 3.  Then, after extensive letter briefing by the parties and notwithstanding specific instructions from the Court regarding an appropriate document production schedule, see Doc. No. 213 at 2, the parties were unable to

---

[3]  Qualcomm suggests that its installation of the Debussy tool was unnecessary, classifying it as a tool used by only a small subset of its engineers for debugging, not analysis.  Id. at 4-5.

[4]  Although Qualcomm makes an undue burden objection to the production of the ModelSim tool, it also represents that it has agreed to attempt to install ModelSim on the source code computer.  Plf's Opp. at 11-12.

[5]  Qualcomm contends that ModelSim is "an expensive and complex hardware design simulation tool having a market value of $35,000 per copy."  Id. at 12.  Qualcomm continues that ModelSim's installation would require a computer running a different operating system than the one already provided, as well as a standalone license for a program Qualcomm does not currently have in its possession.  Id.; see also Shippee Decl. ¶¶ 9-10 (describing the "significant undertaking" required to create a working environment in which ModelSim simulations can be run).

agree upon final production dates. As a result, the Court selected an August 25, 2006 deadline for the production of numerous documents, including source code. Doc. No. 218 at 4. Broadcom now claims—and Qualcomm adamantly denies—that Qualcomm failed to comply with these discovery deadlines as they relate to source code. Broadcom seeks issue preclusion sanctions on this basis.

Of those sanctions the Court may impose under Rule 37(b)(2), preclusion sanctions are among the most severe. Under certain circumstances, such sanctions are tantamount to a dismissal, and thus are appropriate only in "extreme circumstances," and where the violations at issue are "due to willfulness, bad faith, or fault of the party." Commodity Futures Trading Comm'n, 67 F.3d at 771 (citations omitted). As such, "[e]xclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side." Amersham Pharmacia Biotech, Inc. v. Parkin-Elmer Corp., 190 F.R.D. 644, 648 (N.D. Cal. 2000) (citing Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997)).

As an initial matter, the Court questions Qualcomm's claims of complete compliance with the aforementioned discovery orders. The Court has extensive knowledge of the parties' many disputes regarding the state of discovery, and is also well aware of Qualcomm's displeasure with the August 25, 2006 production deadline. Moreover, as recently as September 13, 2006, Qualcomm acknowledged its inability to complete its document production in accordance with the schedule imposed. See September 13, 2006 letter from David Kleinfeld (noting that "regrettably, and despite every possible effort and round-the-clock work by several dozen people—from QUALCOMM employees, to attorneys and legal staff, to outside vendors—QUALCOMM was not able to complete its

substantial production by August 25, as the Court ordered"). While the Court recognizes that this admission could pertain solely to documents other than source code, the admission, coupled with the Court's own recollection of Qualcomm's document production concerns, renders Qualcomm's denials somewhat suspect.

In any event, based on a review of the briefing submitted, the Court finds that the state of Qualcomm's source code production does not present "extreme circumstances" sufficient to impose the wide-sweeping preclusion sanctions Broadcom seeks. See Commodity Futures Trading Comm'n, 67 F.3d at 771. Even assuming Qualcomm's source code production was as untimely and incomplete as Broadcom alleges, Broadcom's claims of prejudice do not rise to the level of "undue prejudice." See Amersham Pharmacia Biotech, Inc., 190 F.R.D. at 648. The record reveals that Qualcomm produced source code specifically identified by Broadcom in compliance with the July 21, 2006 production deadline. See Gutierrez Decl. Ex. 1 (July 10, 2006 letter from Greg Schodde to Heidi Gutierrez, describing the specific structures and features for which Broadcom expected to receive source code); see also Plf's Opp. at 2-3, 8-10; Riddle Decl. at ¶ 2; Amerga Decl. at ¶¶ 3-5, 8, 10; Kang Decl. at ¶¶ 3-4, 8; Konganda Decl. at ¶ 2 (identifying those types of source code Qualcomm's engineers reviewed for relevance and responsiveness). In mid August 2006, Broadcom requested additional source code, and provided Qualcomm with a list of purportedly missing, relevant code. See George Decl. Ex. 4. In late August 2006, various Qualcomm engineers reviewed and identified this supplemental source code for production. See Riddle Decl. at ¶ 3. By September 6, 2006, Qualcomm made supplemental source code available to Broadcom. See Laxamana Decl. ¶ 4. Under this production schedule, Broadcom can at best establish a twelve-day delay

in its receipt of source code. Such a delay cannot be construed as "undue prejudice," and lends little support to Broadcom's claims of significant interference with either its experts' or its attorneys' preparation of its case. See Amersham Pharmacia Biotech, Inc., 190 F.R.D. at 648.

Based on the totality of the circumstances presented, and for the reasons enunciated above, the Court declines to exercise its discretion to impose preclusion sanctions. Accordingly, to the extent that Broadcom seeks issue preclusion sanctions to remedy any harm caused by Qualcomm's alleged discovery violation, Broadcom's motion is **DENIED**.

### B. Production of Source Code and Source Code Analysis Tools

As noted above, Broadcom alternatively requests that the Court order Qualcomm's immediate production of all responsive source code, together with an identification of those source code files responsive to Broadcom's Rule 30(b)(5) deposition notices. Def's Mem. at 8-9; Def's Reply at 10-11. Broadcom also asks that Qualcomm be ordered to provide all analysis tools used by Qualcomm's engineers in connection with source code development, in particular, the Debussy and ModelSim tools. Id.

#### 1. Source Code

In its pleadings, Broadcom identifies at least four categories of source code allegedly missing from Qualcomm's production. Def's Mem. at 1; Def's Reply at 4, 6-7. Specifically, Broadcom claims that Qualcomm continues to withhold source code (1) "for accessing the BUCK_PWM_CNTRL and BUCK_CNTRL registers," (2) "for the receiver front end of any of the Qualcomm Accused Products," (3) "relating to variables used by the correlator searcher as used in the Qualcomm Accused Products," and (4) for "builds" files. Id. Qualcomm counters that it has produced or will

produce the first three types of code. Plf's Opp. at 14-16.[6]

Qualcomm states that it produced source code for accessing the BUCK_PWM_CNTRL and BUCK_CNTRL registers on September 6, 2006. Plf's Opp. at 14; see also Riddle Decl. ¶ 3 (explaining that this code was not initially produced due to lack of relevance, namely, because "the operation of [this] register has no bearing on the allowable core supply voltage and clock frequency levels for QUALCOMM's products or the process by which a CPU selects the voltage and frequency levels at which it will operate"); Laxamana Decl. ¶ 2 (declaring that this source code was loaded on the source code computer on September 6, 2006). With regard to source code "for the receiver front end of any of the Qualcomm Accused Products," Qualcomm argues that although all but one of the Broadcom patents-in-suit have nothing to do with the "receiver front end," it has already produced source code and related documents sufficient to identify the signal path used by the products in question. Plf's Opp. at 15; see also Amerga Decl. ¶ 8. As to the third category of purportedly missing code—which relates to variables used by the correlator searcher as used in the Qualcomm Accused Products—Qualcomm contends that this description is too vague for it to conduct an appropriate source code search, and faults Broadcom for failing to meet and confer on this issue prior to filing the instant motion. Plf's Opp. at 16; see also Amerga Decl. ¶ 10. For these reasons, Qualcomm maintains that it had no reason to include these categories of source code in its initial production, and in any event, it has either produced or agreed to produce these additional source code types. Plf's Opp. at

---

[6] Because Broadcom first identified "builds" files as additional missing source code in its Reply, see Def's Reply at 4, 6-7, Qualcomm's opposition does not address this final source code category.

16.

On September 6, 2006, Broadcom's counsel formally requested that Qualcomm immediately (1) produce all responsive source code, accompanied by a specific identification of the code portions relevant and responsive to Broadcom's Rule 30(b)(5) deposition notices, (2) certify that its source code production is complete, and (3) provide the "ModelSim tool, or other tool(s) used by Qualcomm," along with all "code or other files necessary for ModelSim to function." See Gutierrez Decl. Ex. 9 at 2. In response, Qualcomm notes that it has agreed (1) to produce "all software code for the accused products and all VHDL code for the modem portion and the 'receiver front end' of the accused products," (2) to certify that its source code production is complete, and (3) to try to install ModelSim on the source code computer. Plf's Opp. at 8. Qualcomm refused, however, to catalogue its source code production to correspond with Broadcom's Rule 30(b)(5) deposition notices. Id.

The Court finds that Broadcom is entitled to receive and review any and all source code relevant to the functionality of the patents at issue in this case.[7] The Court finds that Qualcomm's September 6, 2006 agreement to produce "all software code for the accused products and all VHDL code for the modem portion and the 'receiver front end' of the

---

[7] The Court is troubled by Qualcomm's apparent practice of unilaterally determining which source code and related documents are necessary or sufficient for Broadcom to prepare its case, rather than just producing all relevant code and documents. The Court also is troubled by the fact that Broadcom apparently filed the instant motion prior to the completion of meet and confer efforts. However, given the status of this case, the Court finds it unnecessary to resolve the cross-allegations related to these issues and, rather, reminds each party that it must meet and confer in person and in good faith prior to contacting the Court about a discovery dispute and must produce all relevant, non-privileged code and documents.

accused products" and to "certify in writing that its production was complete" alleviates any alleged deficiencies in the current state of Qualcomm's source code production. Plf's Opp. at 8. Accordingly, to the extent that Qualcomm has yet to produce this agreed-upon source code, the Court orders Qualcomm to make such source code available to Broadcom no later than five (5) business days after this Order's filing date. Qualcomm is further ordered to accompany this final source code production with a brief index (with bates-range or other identification) of the code being produced.[8] Finally, in accordance with its proposal, Qualcomm is ordered to provide written certification of its complete source code production no later than five (5) business days after this Order's filing date.

### 2. Source Code Analysis Tools

Again, Broadcom contends that Qualcomm has repeatedly withheld software tools vital to Broadcom's source code analysis. Def's Mem. at 5-7; Def's Reply at 8-9. For example, Broadcom asserts that its long-standing requests for identification of those tools Qualcomm's engineers use in connection with source code development only recently prompted Qualcomm's mention of its engineers' use of the Debussy and ModelSim tools. Def's Mem. at 6; Def's Reply at 8. Broadcom underlines that Qualcomm's opposition provided its first notice of Qualcomm's engineers' use of an unidentified version of the Debussy tool, a version different than that previously installed on the source code computer and that

---

[8] By imposing this additional index requirement, the Court does not charge Qualcomm with indexing its entire source code production. Instead, Qualcomm's index is limited to the additional source code it produces to Broadcom under the deadline set by and through this Order. The Court also is not requiring Qualcomm to identify which code is responsive to which Rule 30(b)(5) requests. The Court imposes this additional indexing requirement on Qualcomm due to its untimely production of the relevant code.

ultimately proved incompatible with Qualcomm's source code. Compare Plf's Opp. at 4 with Def's Reply at 8; see also Niggemeyer Decl. at ¶ 5 (noting that the Debussy tool installed on the source code computer is "not functioning with the Qualcomm code installed" thereon). Moreover, Broadcom argues that Qualcomm's attempt to distinguish ModelSim as a simulation tool not contemplated by the protective order's production requirements is unavailing. Def's Mem. at 6-7. According to Broadcom, the protective order makes no distinction between analysis and simulation tools. Id. at 7 (citing Doc. No. 125 at ¶ 8(d)). Broadcom also highlights that the ModelSim website identifies the tool's features as including "[p]owerful, intuitive GUI speeds debug and analysis of all languages." See George Decl. Ex. 10 at 1. Given Qualcomm's delay in identifying all appropriate analysis tools, and considering the relatively short time remaining for source code analysis, Broadcom insists that any and all such tools must be produced immediately. Def's Reply at 11; see also Niggemeyer Decl. at ¶¶ 6-7 (explaining that the Debussy tool is useful to analyze and understand relevant source code, and emphasizing that given the restricted time frame for inspection, "a simple text-based tool is inefficient to analyze a large amount of source code").

Qualcomm argues that with the exception of ModelSim, it has met each of Broadcom's demands for software analysis tools. Plf's Opp. at 1, 11. Specifically, Qualcomm explains that, after significant time and effort, it configured the source code computer with both the standard software "image" used by its engineers and a version of the Debussy tool. Id. at 3-5, 10. Qualcomm dismisses Broadcom's recent complaints that the version of the Debussy tool it provided is incompatible with Qualcomm's source code production, claiming that Broadcom is "making an

issue out of a tool not normally used by QUALCOMM and not required to be provided under the Protective Order." Id. at 7, 10. Finally, Qualcomm notes that it is currently attempting to install the ModelSim tool on the source code computer, despite the extensive effort and expense involved and notwithstanding the fact that this tool, as a simulation tool, is not contemplated by the protective order. Id. at 11-12; see also Shippee Decl. ¶¶ 5, 8-10.

On the record presented, it appears that Qualcomm has provided varied source code analysis tools for Broadcom's use. However, at least one such tool—the Debussy tool—was not produced in the same hardware or software environment in which it was used by Qualcomm's engineers. Plf's Opp. at 4-5 (acknowledging that it installed on the source code computer a PC version of the Debussy tool, which is not the version used by Qualcomm's engineers). Moreover, the version of the Debussy tool provided proved incompatible with the code present on the source code computer, thus rendering the tool useless to Broadcom's source code analysis. Despite Qualcomm's insistence that the Debussy tool is unnecessary to source code analysis, the Court is unconvinced that Broadcom's analysis should be relegated to only a standard software image and an unusable Debussy tool, especially given Qualcomm's acknowledgments that its engineers use Debussy and ModelSim for various code-related tasks.

Still, the Court is cognizant that Qualcomm does not possess a version of the Debussy tool compatible with the source code computer. Id. As such, the Court finds it inappropriate to require Qualcomm to incur the expense of acquiring a second version of this tool for Broadcom's benefit. As a result, and to remedy the situation presented by the current state of the source code analysis tools, the Court will

require Qualcomm to install the ModelSim tool on the source code computer. This requirement strikes the most appropriate balance between the parties' respective concerns, and will provide Broadcom with a functioning analysis tool. Accordingly, if it has not done so already, Qualcomm is required to provide on the source code computer a functioning version of the ModelSim tool no later than five (5) business days after this Order's filing date.

**C.    Rescheduling Depositions and the Expert Disclosure Deadline**

Finally, Broadcom seeks leave to reschedule five (5) source-code related depositions, and requests a two (2) week extension of its expert report deadline. Def's Mem. at 9; Def's Reply at 1 n.1. Broadcom claims that without additional time to review and analyze Qualcomm's supplemental source code production, it will be unable to incorporate such discovery in its expert reports or deposition preparation. Id. Qualcomm does not oppose this request.

The Court agrees that the additional discovery ordered above justifies Broadcom's request for leave to reschedule source code-related depositions. As such, on or before **October 6, 2006**, the parties are required to submit a stipulation setting forth individual dates for the five (5) source code-related depositions that Broadcom wishes to reschedule. The stipulation shall be entitled "Joint Motion Regarding Source Code-Related Depositions." If the parties are unable to agree on a deposition date for any of these five (5) deponents, the stipulation must also identify the deponent by name, and provide the location and all dates on which that deponent is available for deposition.

With regard to Broadcom's request for a one-sided extension of the expert report deadline, the Court declines to extend any dates set forth in the Amended Case Management Conference Order Regulating Discovery and

Other Pretrial Proceedings. Doc. No. 174. That order sets forth expert discovery deadlines as follows:

> [a]ll expert disclosures required by Fed. R. Civ. P. 26(a)(2) shall be served on all parties **no later than twenty (20) days after the filing of the final Claim Construction Order**. Any contradictory or rebuttal information shall be served **no later than twenty-one (21) days after the above-described deadline for service of opening expert disclosures**.
>
> [. . .]
>
> All fact discovery shall be completed by all parties on or before **October 2, 2006**. All expert discovery shall be completed **either on October 2, 2006, or thirty (30) days after the above-described deadline for service of rebuttal expert reports, whichever is later**.

Id. at 2-3 (emphasis in original). Although Markman hearings in this case concluded on September 27, 2006, the Court has yet to issue its final Claim Construction Orders, and is unlikely to do so within the next few days. Thus, even considering the supplemental discovery to be received and additional depositions to be taken, the current discovery and expert disclosure deadlines provide Broadcom with sufficient time to prepare its expert reports. As a result, Broadcom's request to extend its expert disclosure deadline by two (2) weeks is **DENIED**.

## CONCLUSION

In sum, Broadcom's motion for sanctions is **GRANTED IN PART** and **DENIED IN PART** as follows:

Broadcom's request for the imposition of issue preclusion sanctions is **DENIED**.

Broadcom's request for the immediate production of responsive source code is **GRANTED IN PART**. Qualcomm is ordered to produce "all software code for the accused products and all VHDL code for the modem portion and the 'receiver front end' of the accused products" no later

1 than five (5) business days after this Order's filing date. In
2 connection with this supplemental source code production, Qualcomm shall
3 provide a brief index, by bates-range or other identifier, of the code
4 being produced. By the same date, Qualcomm also is required to provide
5 Broadcom with a written certification that its source code production is
6 complete.

7 Broadcom's request for the immediate production of responsive
8 source code analysis tools is **GRANTED IN PART**. Qualcomm is ordered to
9 provide a functioning version of the ModelSim tool on the source code
10 computer no later than five (5) business days after this Order's filing
11 date.

12 Broadcom's request for leave to reschedule five (5) source code-
13 related depositions is **GRANTED**. On or before **October 6, 2006**, the
14 parties shall submit a stipulation entitled "Joint Motion Regarding
15 Source Code-Related Depositions" setting forth individual dates for each
16 deposition to be rescheduled.

17 Finally, Broadcom's request for an extension of its expert
18 disclosure deadline is **DENIED**.

19 **IT IS SO ORDERED.**

20

21 Dated: October 3, 2006

22                                        BARBARA L. MAJOR
                                          United States Magistrate Judge
23

24 COPY TO:

25 HONORABLE RUDI M. BREWSTER
   U.S. DISTRICT JUDGE
26

27 ALL COUNSEL

28